**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ABBVIE INC., et al.** | § | **PLAINTIFFS** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:24-cv-184-HSO-BWR** |
| | § | |
| | § | |
| **LYNN FITCH** | § | |
| *in her official capacity as the* | § | |
| *Attorney General of the State of* | § | |
| *Mississippi* | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT LYNN
FITCH'S MOTION [149] FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFFS' MOTION [157] FOR SUMMARY JUDGMENT**

This matter returns before the Court on cross-motions for summary judgment

after the close of discovery. *See* Mot. [149]; Mot. [157]. After due consideration of

the Motions [149], [157], the record, and relevant legal authority, the Court finds

that the Motion [149] of Defendant Lynn Fitch, in her official capacity as the

Attorney General of the State of Mississippi ("Defendant"), should be granted, and

Plaintiffs AbbVie Inc., Allergan, Inc., Durata Therapeutics, Inc., AbbVie Products

LLC, Aptalis Pharma US, Inc., Pharmacyclics LLC, and Allergan Sales, LLC's

(collectively "Plaintiffs" or "Abbvie") Motion [157] should be denied.

I. BACKGROUND

A.    Factual Background

This case is one of several lawsuits challenging Mississippi's Defending

Affordable Prescription Drug Costs Act, Miss. Code Ann. § 41-149-1, *et seq.* ("H.B.

728"), which Plaintiffs assert implicates a federal program referred to as Section

1

340B.  *See* 42 U.S.C. § 256b.  The Court has addressed the facts of this case previously, but to summarize:

> Section 340B requires pharmaceutical manufacturers that want the federal government to cover their drugs under Medicaid and Medicare Part B to provide discounts on their drugs to certain healthcare providers. Those healthcare providers are called "340B" or "covered" entities, and include public hospitals and community health centers, many of which are providers of safety-net services to the poor.  The 340B Program is superintended by the Health Resources and Services Administration, ("HRSA"), a unit of the Department of Health and Human Services, ("HHS").
>
> "Drug manufacturers," such as Plaintiffs, opt into the 340B Program by signing a form Pharmaceutical Pricing Agreement ("PPA") used nationwide. . . .  PPAs must require that the manufacturer offer each covered entity covered outpatient drugs for purchase at or below the applicable ceiling price if such drug is made available to any other purchaser at any price.

*AbbVie Inc. v. Fitch*, No. 1:24-CV-184-HSO-BWR, 2024 WL 3503965, at *1-2 (S.D. Miss. July 22, 2024) (citations and quotations omitted), *aff'd*, No. 24-60375, 2025 WL 2630900 (5th Cir. Sept. 12, 2025).

Congress's goal in enacting the Section 340B reimbursement framework was "'to subsidize other services provided by 340B hospitals' because they 'perform valuable services for low-income and rural communities but have to rely on limited federal funding for support.'"  *Id.* at *2 (quoting *Am. Hosp. Ass'n v. Becerra*, 596 U.S. 724, 730, 738 (2022)).  In so doing, the statute allows "covered entities to give uninsured patients drugs at little or no cost," while simultaneously allowing them to "obtain extra revenue from serving insured patients because they turn a profit when insurance companies reimburse them at full price for drugs that they bought at the 340B discount."  *Id.* (quotations omitted).

One issue absent from the statutory scheme – and an issue that has spawned much litigation in Mississippi and other states with statutes similar to H.B. 728 – is "how discounted drugs under Section 340B are delivered to patients of covered entities." *Id.* at *4. HHS and HRSA attempted for decades to fill this statutory gap with guidance. *See id.* at *4-6 (collecting and discussing HRSA guidance opinions from 1996 and 2010, and an HHS advisory opinion from 2020). These opinions permitted covered entities to contract with for-profit pharmacies and have those contract pharmacies dispense discounted 340B drugs to the covered entities' patients. *See id.* The more recent of these attempts was ultimately struck down by the United States Courts of Appeals for the Third and D.C. Circuits on grounds that the matter could not be regulated at the federal level because the statutory text of Section 340B is silent about delivery. *See id.* at *6; *Sanofi Aventis U.S. LLC v. United States Dep't of Health & Hum. Servs.*, 58 F.4th 696, 703 (3d Cir. 2023); *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452, 460 (D.C. Cir. 2024). In response, individual states – including Mississippi – took up the regulatory mantle. *See Fitch*, 2024 WL 3503965, at *6.

In April 2024, the Governor of Mississippi signed into law H.B. 728, which

> provides that "[a] manufacturer or distributor shall not deny, restrict, prohibit, or otherwise interfere with, either directly or indirectly, the acquisition of a 340B drug by, or delivery of a 340B drug to, a pharmacy that is under contract with a 340B entity and is authorized under such contract to receive and dispense 340B drugs on behalf of the covered entity." H.B. 728 § 4. The law defines a "340B drug" as a covered outpatient drug "that has been subject to any offer for reduced prices by a manufacturer pursuant to [Section 340B]." H.B. 728 § 2(a). A violation of H.B. 728 constitutes a violation of the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*, *see* H.B. 728 § 5, which

3

provides for both civil and criminal penalties . . . .

*Id.* at *7 (alterations in original).

B.      Procedural History

On June 18, 2024, Plaintiffs filed suit against Defendant, alleging, as the

United States Court of Appeals for the Fifth Circuit has since summarized, that

> when covered entities are allowed to distribute Section 340B drugs via
> contract pharmacies, those contract pharmacies cause covered entities
> to place orders for larger quantities of discounted drugs than they are
> actually entitled to, and the contract pharmacies then improperly resell
> those discounted drugs in ways that increase their profits.  AbbVie avers
> that H.B. 728 has the practical effect of allowing this type of illicit
> activity to occur.

*AbbVie, Inc. v. Fitch*, 152 F.4th 635, 648 (5th Cir. 2025) (per curiam); *see generally*

Compl. [1].  The Complaint [1] seeks a declaratory judgment that H.B. 728 is

unlawful and injunctive relief prohibiting its enforcement, *see* Compl. [1] at 46, and

raises claims of federal preemption, violations of the Takings, Due Process, and

Commerce Clauses of the United States Constitution, and violations of the Takings

and Due Process Clauses of the Mississippi Constitution, *see id.* at 33-45.

On June 19, 2024, Plaintiffs filed a Motion [8] for Preliminary Injunction,

advancing their preemption and takings claims.  *See* Mot. [8] at 2-3; Mem. [9].  The

Court denied the Motion [8], finding that Plaintiffs "ha[d] not shown a substantial

likelihood of success on the merits as required to obtain a preliminary injunction . . .

."  *Fitch*, 2024 WL 3503965, at *21.  The Fifth Circuit affirmed, similarly finding

that Plaintiffs had not carried their burden on either the preemption or takings

claims.  *See AbbVie*, 152 F.4th at 648.  But the court left open the possibility for

4

Plaintiffs to relitigate these matters, noting the sparsity of the record before it and stating that "[i]f H.B. 728 works the way that AbbVie alleges it does—allowing covered entities and contract pharmacies to flout Section 340B's diversion ban by improperly reselling discounted Section 340B drugs—it would undoubtedly be a problematic statute." *Id.* at 639; *see also id.* at 648.

As previously stated, this issue has sparked several lawsuits in this and other states with similar statutes. In fact, this case is one of at least four challenges to H.B. 728 pending in this District alone. *See generally Pharm. Rsch. & Manufacturers of Am. v. Fitch*, No. 1:24-CV-160-HSO-BWR, 2024 WL 3277365 (S.D. Miss. July 1, 2024); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737 (S.D. Miss. 2024); *AstraZeneca Pharms. LP v. Fitch*, 766 F. Supp. 3d 657 (S.D. Miss. 2024). The drug manufacturers in those cases also sought preliminary injunctions on the same or similar grounds as Plaintiffs here, and all were denied. *See Pharm. Rsch. & Manufacturers of Am.*, 2024 WL 3277365, at *16; *Novartis Pharms. Corp.*, 738 F. Supp. 3d at 753; *AstraZeneca Pharms. LP*, 766 F. Supp. 3d at 668-69. Two of those decisions were appealed, and the Fifth Circuit affirmed both denials, relying in large part on its recent decision in this case. *See Pharm. Rsch. & Manufacturers of Am. v. Fitch*, No. 24-60340, 2026 WL 963501, at *5 (5th Cir. Apr. 9, 2026) (per curiam); *Novartis Pharms. Corp. v. Fitch*, No. 24-60342, 2026 WL 963504, at *3 (5th Cir. Apr. 9, 2026) (per curiam), *reh'g en banc denied*, No. 24-60342 (May 5, 2026).

Of particular note, after it affirmed the Court's denial of AbbVie's preliminary injunction in this case, the Fifth Circuit decided *AbbVie, Inc. v. Murrill*,

166 F.4th 528 (5th Cir. 2026). *Murrill* affirmed summary judgment for the Attorney General of Louisiana against drug manufacturers regarding a Louisiana statute ("Act 358") that the Fifth Circuit described as "virtually identical" to Mississippi's H.B. 728. 166 F.4th at 543. The plaintiffs there raised many of the same arguments challenging Act 358, and the Fifth Circuit relied on its reasoning in *AbbVie* in rendering its decision. *See id.* at 539-44.

Undeterred by this recent string of defeats, Plaintiffs now seek summary judgment against Defendant. *See generally* Mot. [157]; Mem. [165]; Reply [196]; Resp. [184]. At this stage, Plaintiffs re-urge their federal preemption and takings claims, advance their due process and Commerce Clause claims, and argue that H.B. 728 violates the Supremacy Clause by impermissibly regulating a federal program.[1] *See* Mot. [157] at 1-2; Mem. [165] at 11-34.

Defendant has filed her own Motion [149] for Summary Judgment, arguing that Plaintiffs' claims either fail on the merits, are foreclosed by *Murrill* and *AbbVie*, or are barred by sovereign immunity under the Eleventh Amendment. *See* Mot. [149] at 1; Reply [198] at 1; *see generally* Mem. [150]; Resp. [202]. Defendant also filed two Motions [151], [153] to exclude expert testimony. *See* Mot. [151], [153]. Since the preliminary injunction ruling, the parties have conducted discovery for over a year, *see* Text Only Order entered Sept. 17, 2025, and the issue now is whether the completed record has revealed "that H.B. 728 is indeed 'problematic'" and disproves many of the assumptions that the Fifth Circuit relied upon in

---

[1] Plaintiffs do not assert their takings or due process claims under the Mississippi Constitution. *See generally* Mot. [157]; Mem. [165].

6

rendering its earlier decision in this case, Mem. [165] at 2; *see also* Mem. [150] at 1.

## II. DISCUSSION

A.    Standard of Review

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must "identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quotation omitted). Summary judgment is also "appropriate where the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).

Ultimately, the Court must be satisfied that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When parties file cross-motions for summary judgment, the Court must "review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020) (quotation omitted). The Court has done so in this case, and reaches the following conclusions.

B.    Federal Preemption

At this stage, the parties continue to contest the same two preemption claims

previously litigated: conflict and field preemption. *See Fitch*, 2024 WL 3503965, at *8; Mem. [165] at 12-23; Mem. [150] at 8-16. Defendant argues that both arguments are foreclosed by *AbbVie* and *Murrill*. *See* Reply [198] at 1; Resp. [202] at 1. As a general rule, "[w]hether a state statute . . . is preempted by federal law is a question of law[.]" *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 442 (5th Cir. 2001); *see also* Mem. [150] at 9; Resp. [202] at 2-3. But Plaintiffs counter that "preemption determinations depend on how a challenged law actually operates in practice[.]" Resp. [184] at 13 (emphasis omitted) (citing *Smalley v. Union Pac. R.R. Co.*, No. 6:18-CV-00180-RWS, 2018 WL 6710033, at *4 (E.D. Tex. Dec. 4, 2018), *report and recommendation adopted*, No. 6:18-CV-00180-JDK, 2018 WL 6696565 (E.D. Tex. Dec. 20, 2018); *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1301-02 (S.D. Fla. 2017)). At this stage, the Court analyzes these claims to determine whether discovery has revealed that H.B. 728 is in fact preempted.

1.    Presumption Against Preemption

The Fifth Circuit determined that "H.B. 728 implicates two traditional general areas of state regulation and police power: public health and consumer protection," *AbbVie*, 152 F.4th at 646, and therefore "the presumption against preemption applies here because H.B. 728 regulates matters that have traditionally been the domain of the states," *id.* at 648. Plaintiffs contend that "discovery has now confirmed that H.B. 728 does not regulate in classic police-powers spheres of 'drug distribution,' 'pharmacy practice,' 'consumer protection,' or 'public health.' Rather, the law has the intended and practical effect of requiring manufacturers to

sell their drugs at a discounted price." Mem. [165] at 21 (emphasis omitted).

The discovery Plaintiffs reference consists of deposition testimony essentially stating that H.B. 728 requires drug manufacturers to extend drugs at the 340B discounted price to contract pharmacies, which they otherwise would not do – thereby regulating price. *See id.* at 13-14, 21; Resp. [184] at 15-16; Thompson Dep. Tr. [165-5] at 20-21; Clark Dep. Tr. [165-2] at 31. This price-versus-delivery contention is one of the focal points of Plaintiffs' Motion [157], but in the Court's view, it is a purely legal question. *See, e.g., Kemp v. G.D. Searle & Co.*, 103 F.3d 405, 407 (5th Cir. 1997) ("Questions of statutory interpretation are questions of law[.]").

In *Murrill*, the court found that the identically worded "Act 358 does not regulate prices; it regulates conduct. . . . The district court correctly recognized that distinction." 166 F.4th at 541-42. *AbbVie* reached a similar conclusion. 152 F.4th at 648 (finding that H.B. 728 protects the "distribution of Section 340B drugs . . ."). In short, Plaintiffs say that H.B. 728 regulates price, *see* Mem. [165] at 13-14, 21; Resp. [184] at 15-16, but the Fifth Circuit (and this Court, for that matter) has concluded that it regulates delivery, *see Murrill*, 166 F.4th at 541-42; *Fitch*, 2024 WL 3503965, at *12. The Court is bound by Fifth Circuit precedent, and despite Plaintiffs' argument to the contrary, discovery has not changed the fact that the presumption against preemption still applies.

2.    Field Preemption

Plaintiffs argue that H.B. 728 is field preempted because "Congress created a

9

closed, federally administered drug pricing program," and "H.B. 728 regulates

within this exclusive federal field."  Mem. [165] at 23.  "Field preemption occurs

when Congress intends to 'occupy the field,' taking over a field of law to the

exclusion of state or local authority."  *United States v. Zadeh*, 820 F.3d 746, 751 (5th

Cir. 2016).  In considering Plaintiffs' field preemption claim, the Fifth Circuit held:

> Here, there is no federal framework so pervasive that Congress left no
> room for state supplementation. . . .  Section 340B explicitly regulates
> several key matters: it caps the prices of covered drugs; controls
> eligibility for "covered entity" status; prohibits covered entities from
> claiming duplicate discounts and engaging in diversion . . . .  But Section
> 340B does not "provide a full set of standards governing" discounted
> drugs for needy patients.  Notably, it regulates neither the distribution
> of drugs to patients nor the role of pharmacies in this distribution.

*AbbVie*, 152 F.4th at 646 (citations omitted).

It is unclear how discovery has changed, or could change, this finding, and

Plaintiffs conspicuously do not cite to any discovery in their argument on the

matter.  *See* Mem. [165] at 23; Reply [196] at 2-5; Resp. [184] at 32.  They simply

attempt to relitigate an issue that has been decided now four times over.  *See*

*AbbVie*, 152 F.4th at 647; *Murrill*, 166 F.4th at 540; *Novartis Pharms. Corp.*, 2026

WL 963504, at *2; *Pharm. Rsch. & Manufacturers of Am.*, 2026 WL 963501, at *2.

Field preemption does not apply here.

3.    Conflict Preemption

As before, the only type of conflict preemption Plaintiffs argue is obstacle

preemption, which is "when the challenged state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress."

*AbbVie*, 152 F.4th at 647 (quotation omitted); *see also Fitch*, 2024 WL 3503965, at

10

*8; Mem. [165] at 13-23.

Their first contention is an extension of the delivery-versus-price dispute. Plaintiffs posit that "H.B. 728 effectively creates a state-law 340B overcharge cause of action to be enforced at the discretion of state officials," *id.* at 13, but that "Congress vested exclusive enforcement authority, including overcharge claims, in HHS," *id.* at 15 (citing 42 U.S.C. §§256b(d)(3)(A)-(B); 42 C.F.R. §10.21(a)(1)). Such tension could lead to "conflicting adjudications or double penalties" between state and federal proceedings. *Id.* at 16. All of this presupposes the idea that H.B. 728 regulates price, not delivery. Again, discovery has not changed this analysis, *see* discussion *supra* Section II.B.1, and moreover, *Murrill* considered and rejected this same argument at summary judgment, *see* 166 F.4th at 541 ("[Plaintiffs] contend that Act 358 impermissibly 'clashes with Congress's enforcement scheme' which vests HHS with exclusive authority to enforce 340B. That framing presents a false conflict.").

Plaintiffs next maintain that Congress chose to give drug manufacturers the freedom "to attach reasonable commercial conditions to their 340B offers to covered entities," Mem. [165] at 18, which H.B. 728 supplants "by mandating that manufacturers sell 340B-priced drugs regardless of a covered entity's willingness to accept the terms of the manufacturer's offer," *id.* at 20. They purportedly locate this congressional decree not in the language of 42 U.S.C. §256b, but rather in its silence. "To treat supposed congressional 'silence' as an invitation for state laws like H.B. 728 ignores the nature of the 340B statute." *Id.* at 19. But that's simply

incorrect.  "'[M]atters left unaddressed' in an otherwise 'comprehensive and detailed' federal regulatory scheme are 'presumably left subject to the disposition provided by state law.'"  *AbbVie*, 152 F.4th at 646 (quoting *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85 (1994)).  No amount of discovery can change this basic principle.

Plaintiffs also assert that H.B. 728 is preempted because it "enabl[es] . . . illegal drug diversion and duplicate discounts," which Section 340B prohibits.  Mem. [165] at 20; *see also* 42 U.S.C. § 256b(a)(5)(B).  They offer deposition testimony which they claim supports their contention that "the more contract pharmacy arrangements, the higher the risk of diversion and duplicate discounting."  Mem [165] at 20 (citing Lott Dep. Tr. [165-1] at 22; Clark Dep. Tr. [165-2] at 44).  Defendant counters that "Plaintiffs have not identified a single instance of diversion or duplicate discounting in Mississippi that was not corrected and repaid by the covered entity through its ongoing compliance program," Resp. [202] at 15; *see also* Reply [198] at 3; Lott Dep. Tr. [203-3] at 24, 30, which Plaintiffs seemingly do not dispute, *see* Reply [196] at 7.[2]

Even if this correlation is accurate, the Fifth Circuit challenged Plaintiffs to show that H.B. 728 "ha[s] the *effect* of allowing covered entities and contract pharmacies to engage in illicit activities that flout Section 340B's diversion ban," *AbbVie*, 152 F.4th at 648 (emphasis added), not that it runs the "risk" of increased

---

[2] Defendant also notes that "hospitals use the same replenishment process at in-house pharmacies as used at contract pharmacies," but Plaintiffs interestingly "do not object to use of in-house pharmacies."  Resp. [202] at 17.

12

diversion, Mem. [165] at 20.  Nothing in H.B. 728 permits, "enabl[es]," *id.*, or "compel[s] discounted transactions that undermine the federal structure designed to police diversion . . . ," Resp. [184] at 22, and Plaintiffs have not shown that it has any such effect in practice.  If covered entities are engaging in diversion schemes, then they are in violation of federal law, *see* 42 U.S.C. § 256b(a)(5)(B), and the remedy would not be to invalidate H.B. 728; it would be to audit the entity and seek administrative redress, just as Congress intended, *see id.* § 256b(d)(3)(A); 42 C.F.R. §10.21(a)(2); *Fitch*, 2024 WL 3503965, at *12.  Plaintiffs' assertion that H.B. 728 creates a "risk" of diversion does not create a genuine dispute of material fact for any of their claims.  Mem. [165] at 20; *see also* Fed. R. Civ. P. 56(a).

Plaintiffs' final point on preemption is that H.B. 728 "expand[s] the list of eligible 340B purchasers" because discovery has shown that "contract pharmacies do take title to 340B-discounted drugs and do not act as covered entities' agents." Mem. [165] at 22 (emphasis omitted); *see, e.g.,* Ex. [165-16] at 5 (Kroger Contract Pharmacy Services Agreement).  On the preliminary injunction record, the Fifth Circuit rejected this argument as "simply incorrect," stating:

> H.B. 728 does not expand Section 340B's list of covered entities to include contract pharmacies.  By its plain text, H.B. 728 requires drug manufacturers to give custody of discounted drugs to contract pharmacies only insofar as they have partnered with covered entities to distribute the drugs to patients. It does not compel manufacturers to "offer" discounted drugs to contract pharmacies in the way that Section 340B compels them to "offer" these drugs to covered entities.

*AbbVie*, 152 F.4th at 647.

Nothing in this reasoning is contingent on title transfer or an agency

13

relationship. *See id.*[3] If anything, the same contracts Plaintiffs rely on confirm that covered entities are the purchasers in Section 340B sales. *See, e.g.*, Ex. [165-16] at 5 (Kroger Contract Pharmacy Services Agreement) ("Covered Entity shall purchase the 340B Drugs . . . ."); Ex. [165-19] at 8 (Walmart 340B Pharmacy Services Agreement) ("Covered Entity shall purchase 340B Processed Drugs . . . ."); *see also* Raymer Dep. Tr. [203-4] at 25, 27; Reply [198] at 3. Plaintiffs attempt to create a material factual dispute where none exists; Defendant is entitled summary judgment on the preemption claims.

C.    Takings Claims

Plaintiffs reurge that H.B. 728 effectuates a physical taking, or alternatively, a regulatory taking. *See* Mem. [165] at 23-33; *AbbVie*, 152 F.4th at 642. Defendant counters that the federal takings claim is foreclosed by *AbbVie* and *Murrill* and otherwise fails on the merits, and that the state-law claim is barred by sovereign immunity under the Eleventh Amendment. *See* Resp. [202] at 1-2, 22-26; Mem. [150] at 16-21. Aside from the state-law claim, the Court reviews the summary judgment record to determine what impact discovery has had, if any, and whether it creates any material fact questions for trial.

1.    Federal Takings Claims

a.    Physical Taking

*AbbVie* previously held that H.B. 728 does not effectuate a physical taking:

The   record   indicates   that   H.B.   728   does   not   impose   on   drug

---

[3] In fact, the Fifth Circuit conclusively addressed this issue despite a similar argument raised by Plaintiffs. *See AbbVie*, 152 F.4th at 640 n.1 ("AbbVie asserts that things work differently in practice, averring that, in reality, the contract pharmacy often takes title to the drugs.").

14

> manufacturers a positive obligation to directly transfer or sell their drugs to anyone.  Nor does it require them to sell larger quantities of their drugs at discounted prices than Section 340B requires and thereby deprive them of sales at full market price.  Under H.B. 728, AbbVie still receives payment of the full discounted amounts to which it is entitled under Section 340B.  H.B. 728 simply imposes on drug manufacturers a negative obligation of non-interference with covered entities' arrangements with contract pharmacies, by preventing them from refusing to sell Section 340B drugs to covered entities that have arrangements with contract pharmacies and from restricting what covered entities can do with Section 340B drugs after they have purchased them.

152 F.4th at 643.  *Murrill* adopted this language, finding that, "[l]ike its Mississippi counterpart, Act 358 does not deprive AbbVie of anything to which § 340B entitles it."  166 F.4th at 543.  Plaintiffs now maintain that discovery has revealed that H.B. 728 actually "imposes an affirmative obligation to transfer drugs at 340B prices," Mem. [165] at 25, and "compels additional discounted sales," *id.* at 26; *see also* Resp. [184] at 34-36.

With respect to the first point, Plaintiffs offer deposition testimony that "but for H.B. 728, AbbVie would 'prevent [covered entities] from buying drugs at [their] contract pharmacies [at] the 340B price' by directing wholesalers to decline those sales," Mem. [165] at 25 (alterations in original) (quoting Clark Dep. Tr. [165-2] at 22), and therefore "[t]he law's negative prohibition on interference is a positive obligation to transact," *id.*  On the second point, Plaintiffs explain that "[t]he expanding number of contract pharmacies allows covered entities to 'capture more patients underneath the 340B program which, in turn, results in an increased monetary benefit back to the covered entity,'" *id.* at 26 (quoting Raymer Dep. Tr. [165-4] at 23), triggering additional discounted sales, *see id.* at 26-27.

15

But this evidence offers nothing new. The Fifth Circuit already assumed that laws like H.B. 728 were created to combat manufacturers' policies against covered entities contracting with pharmacies. *See AbbVie*, 152 F.4th at 641-42; *Murrill*, 166 F.4th at 536. To the extent that H.B. 728 has resulted in "captur[ing] more patients underneath the 340B program," *id.* at 26 (quotation omitted), that is H.B. 728's intent, *see* Ex. [157-33] at 24-25 (Appellee Brief), and it is consistent with the goals of Section 340B, *see Murrill*, 166 F.4th at 534. Discovery has not created a material fact question for trial that H.B. 728 imposes any affirmative obligations on Plaintiffs. *See* Mem. [165] at 25. To the contrary, it has confirmed that H.B. 728 does not alter "the number of covered entity locations, the number of eligible patients, or the number of eligible prescriptions. The only thing that changes is the location where the patient accesses the drugs." Resp. [202] at 22 (citing Clark Dep. Tr. [203-2] at 56; Lott Dep. Tr. [203-3] at 66; Raymer Dep. Tr. [203-4] at 57). Defendant is entitled to summary judgment on this claim.

b.    Regulatory Taking

The Fifth Circuit in *AbbVie* previously rejected Plaintiffs' regulatory taking claim based on the three-factor test set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978):

> As to the first factor: H.B. 728 may have an economic impact on drug manufacturers, because it could increase the number of drugs for which they must provide discounts and therefore cut into their profits. . . . But for most drugs, manufacturers will still receive a large percentage of the market price.
>
> As to the second *Penn Central* factor: H.B. 728 does not significantly interfere with drug manufacturers' reasonable investment-backed

16

> expectations. . . . [W]hen Congress enacted Section 340B, only a very small number of the 11,500 covered entities used in-house pharmacies (approximately 500), meaning that the potential for dispensation of Section 340B drugs by contract pharmacies was foreseeable. . . .
>
> As to the third *Penn Central* factor: the character of the government action in H.B. 728 weighs in the state's favor. H.B. 728 was not enacted solely for the benefit of private parties, but rather furthers important public interests[.]

152 F.4th at 644 (quotations and citations omitted). *Murrill* adopted this reasoning as well. *See* 166 F.4th at 543-44.

Plaintiffs now attempt to refute the first *Penn Central* factor by offering evidence that the average discount of a 340B drug is sixty percent. *See* Mem. [165] at 31; Scheidler Decl. [157-4] at 3. First, Plaintiffs' complaint lies with the amount of the 340B discounts, and again, H.B. 728 does not regulate price – only delivery. *See* discussion *supra* II.B.1. Second, assuming price factors into this analysis, *AbbVie* considered that the discount rate could be as high as fifty percent. 152 F.4th at 644 ("The average discount rate appears to be between 25 and 50 percent." (cleaned up and quotation omitted)). It is doubtful that an additional ten percent would change this analysis. But of course, if the economic burdens of H.B. 728 are as severe as Plaintiffs insist, they can always opt out of Medicaid and Medicare Part B and avoid the problem altogether. *See generally* 42 U.S.C. § 256b; Miss. Code Ann. § 41-149-3.

With respect to the second *Penn Central* factor, Plaintiffs maintain that the foreseeability of 340B drug dispensation by contract pharmacies is not dispositive because the HRSA guidance the Fifth Circuit cited was conditioned upon contract

pharmacies acting as agents, which they again claim discovery has disproven. *See AbbVie* 152 F.4th at 644; Mem. [165] at 31-32. Plaintiffs refer to contracts between covered entities and contract pharmacies, which tend to disclaim agency relationships and speak to passing title at delivery. *See* Mem. [165] at 8; *see also, e.g.* Ex. [165-16] at 5. Defendant counters that "every covered entity representative testifying in discovery confirmed that the contract pharmacies act 'on behalf of' the covered entity," Resp. [202] at 17 (quoting Clark. Dep. Tr. [203-2] at 5; Lott Dep. Tr. [203-3] at 6; Raymer Dep. Tr. [203-4] at 19), and "[a]ny distinction between . . . 'agent' and 'acting on behalf' of . . . is far too fine a point . . . ," *id.* Regardless, this dispute does not undermine *AbbVie*'s finding that HRSA guidance "appears to contemplate that state law might protect covered entities' 'right' to purchase drugs at 340B prices and have them dispensed at multiple pharmacies." 152 F.4th at 644. This factor remains unchanged.

Nor has discovery changed the third *Penn Central* factor. Plaintiffs lament that H.B. 728 "mandates a wealth transfer from AbbVie to other identifiable commercial actors with no requirement to put those profits towards any particular public good." Mem. [165] at 28-29 (quotation omitted); *see also id.* at 32. Their argument focuses on how covered entities use the money they receive from the Section 340B program. *See id.* at 28-30, 32. But, as Defendant points out, "H.B. 728 does not regulate the use of 340B revenues, and HRSA allows a covered entity to use these funds as it sees fit." Resp. [202] at 23 (quotation omitted). And regardless, covered entity representatives have averred that 340B proceeds are

18

generally used to fund all their services, including safety-net programs. *See id.*; Raymer Dep. Tr. [203-4] at 51; Lott [203-3] at 49-51. Discovery has not altered the fact that H.B. 728 was enacted to "expand[] needy patients' access to care and giv[e] covered entities better ability to expand and improve their services." *AbbVie*, 152 F.4th at 644.[4] Summary judgment in Defendant's favor is appropriate on this claim.

2.    State-Law Takings Claim

Defendant contends that the takings claim "under Article III, Section 17, of the Mississippi Constitution is barred by Eleventh Amendment sovereign immunity." Mem. [150] at 16. Plaintiffs do not contest the point. *See generally* Mem. [165]; Reply [196]; Resp. [184]. Because "the Eleventh Amendment prohibits federal courts from enjoining state facilities to follow state law," *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020) (per curiam) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103-23 (1984)), and because Plaintiffs are asking this Court to enjoin state officials from enforcing a state law, *see* Compl. [1] at 46, this claim is barred by the Eleventh Amendment and should be dismissed.

D.    Due Process Claims

Plaintiffs' due process claim appears to be another issue squarely foreclosed

---

[4] Similar to the decisions in *AbbVie* and *Murrill*, because "H.B. 728 effectuates neither a physical taking nor a regulatory taking, [the Court] need not consider" whether the statute serves a public use, whether Plaintiffs have a compensable property interest in 340B drugs, or whether Plaintiffs' voluntary participation in Medicare and Medicaid vitiates any takings claim. *AbbVie*, 152 F.4th at 644 n.4; *see also id.* at 642 n.2; *Murrill*, 166 F.4th at 544 n.76. But with respect to the public use requirement, the Court spoke to this in its preliminary injunction order, *see Fitch*, 2024 WL 3503965, at *20, and the record before it now does not alter its conclusion.

by Fifth Circuit precedent. Their argument – that H.B. 728 is unconstitutionally vague because it "provides no guidance as to what constitutes 'interference,'" Mem. [165] at 33 – is identical to the rejected challenge to Louisiana's Act 358, *see Murrill*, 166 F.4th at 547 ("[Plaintiff]'s vagueness challenge focuses on a single word: 'interfere.'"). Plaintiffs attempt to distance this case from *Murrill* by maintaining that H.B. 728, unlike Act 358, imposes criminal, in addition to civil, penalties, and therefore it "must satisfy a more demanding standard than the statute considered in *Murrill*." Reply [196] at 11.

But the Fifth Circuit recently considered this exact argument as applied to H.B. 728. *See Pharm. Rsch. & Manufacturers of Am.*, No. 24-60340, 2026 WL 963501, at *4 ("[Plaintiff] contends that the scope of the term 'interfere' is so unclear that it could chill lawful conduct . . . . We recently rejected a similar vagueness challenge to an identically worded Louisiana statute in *Murrill*. . . . [Plaintiff]'s vagueness challenge is therefore foreclosed . . . ." (emphasis omitted)). The due process claim should be dismissed.[5] *See id.*; *Murrill*, 166 F.4th at 547.

E.    Commerce Clause Claim

Defendant also seeks summary judgment on Plaintiffs' Commerce Clause claim, contending that it "fails because (1) the presumption against extraterritoriality applies; and (2) even if that presumption is overcome, H.B. 728 does not regulate commerce or conduct occurring wholly outside of and unconnected

---

[5] Because Mississippi's Due Process Clause "is coextensive with the guarantees found in the United States Constitution," the state-law due process claim should also be dismissed. *Mawson v. Univ. of Mississippi Med. Ctr.*, No. 3:11-CV-574-DPJ-FKB, 2012 WL 6649323, at *6 (S.D. Miss. Dec. 20, 2012).

to Mississippi."  Mem. [150] at 27.  Similar to Plaintiff's vagueness challenge, this issue has been decided by the Fifth Circuit.  *See Pharm. Rsch. & Manufacturers of Am.,* 2026 WL 963501, at \*4 ("Nothing in the text extends H.B. 728 beyond Mississippi's borders or indicates that the Legislature intended it to apply extraterritorially. . . .  Consequently, Mississippi's presumption against extraterritorial effect stands, and the Commerce Clause does not bar enforcement of H.B. 728.").  Under this precedent, Plaintiffs' Commerce Clause claim is likewise subject to dismissal.  *See id.*

F.      Regulation of a Federal Program

Lastly, Plaintiffs argue that H.B. 728 "violates the Supremacy Clause of the United States Constitution because it impermissibly regulates a federal program, targeting the federal 340B Program and its participants to impose obligations beyond what federal law requires."  Mot. [157] at 1; *see also* Mem. [165] at 11-12; Reply [196] at 5-7.  This appears to be a repackaging of Plaintiffs' preemption and Commerce Clause claims, and it fails for all the same reasons.  H.B. 728 does not alter any bargain or increase any costs; it "simply imposes on drug manufacturers a negative obligation of non-interference with covered entities' arrangements with contract pharmacies."  *AbbVie*, 152 F.4th at 643; *Murrill*, 166 F.4th at 543 (same).[6] This claim should be dismissed.

---

[6] Plaintiffs offer an amicus brief by the United States filed in another case on appeal to the United States Court of Appeals for the Tenth Circuit, in which the Government similarly argues that laws like H.B. 728 violate the "constitutional stricture by imposing additional burdens on manufacturers who participate in the 340B Program."  Ex. [192-1] at 22; *see generally AbbVie, Inc. v. Weiser*, 811 F. Supp. 3d 1264 (D. Colo. 2025).  This is unpersuasive because the federal government's interpretation of legal questions regarding another state's statute in a different circuit carries little weight on this record.

III. CONCLUSION

Plaintiffs have had another opportunity to demonstrate that the illicit distribution scheme they allege is not just hypothetical, but in fact a reality. They have not done so, and the Court finds there are no material issues of fact sufficient to prevent summary judgment in favor of Defendant. Defendant's Motion [149] for Summary Judgment should be granted.[7] To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined they would not alter the Court's conclusion.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [149] of Defendant Lynn Fitch, in her official capacity as the Attorney General of the State of Mississippi, for Summary Judgment is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiffs AbbVie Inc., Allergan, Inc., Durata Therapeutics, Inc., AbbVie Products LLC, Aptalis Pharma US, Inc., Pharmacyclics LLC, and Allergan Sales, LLC's Motion [157] for Summary Judgment is **DENIED**, and the Complaint [1] is **DISMISSED WITH PREJUDICE**. The Court will enter a separate final judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 3rd day of June, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] Defendant's Motions [151], [153] to exclude expert testimony are therefore moot.